## Columbus Tinsley v. The State.

### No. 3902. Decided November 20, 1907.

**1.—Murder in First Degree—Jury and Jury Law—Waiver—Special Venire.**

Where upon trial for murder, defendant had waived a special venire and failed to indicate any objections to the manner of drawing, choosing or empaneling the jury during the trial; and he was present during the empanelment of the jury, there was no error in overruling the objection that the jurors were not drawn from the box, etc., and that talesmen were summoned to complete the panel.

**2.—Same—Evidence—Harmless Error.**

Where upon trial for murder, a State's witness swore that he found a cartridge 400 or 500 yards from the scene of the shooting, and there was no testimony connecting this incident with anything pertaining to the homicide, or to identify said cartridge with any cartridge defendant had, or that it was of the same size of the bullet in the body of the deceased, or that there were tracks near the place where said cartridge was found, the same was inadmissible; but nevertheless harmless error; as the same did not in any sense tend to strengthen the State's case, or prejudice the rights of defendant.

**3.—Same—Evidence—Clothing of Deceased—Harmless Error.**

Where upon trial for murder, the clothes of the deceased, which had been washed, were introduced in evidence, and the State's attorney merely showed the jury where the ball entered the clothes and then laid them aside, and made no further comment on this matter; and there was nothing to show that what occurred inflamed the minds of the jury, there was no reversible error, although such testimony was not pertinent on any controverted issue in the case. However, such practice is deprecated and discouraged by the court.

**4.—Same—Evidence—Criminative Circumstances.**

Upon trial for murder, there was no error to admit testimony that a short time before the homicide, defendant was seen carrying a pistol, where the circumstances of the case show with reasonable certainty that the shot that killed deceased was from a pistol.

**5.—Evidence—Res Gestæ—Deceased's Declaration.**

Where upon trial for murder, the State introduced a witness who testified that some ten minutes after the shooting, the deceased stated repeatedly in witness' presence that " Duke Tinsley " had shot him, and defendant went by that name, such testimony was admissible as res gestæ.

**6.—Same—Charge of Court—Alibi—Technical Terms.**

Where upon trial for murder, the court gave a charge on alibi but did not attempt to define the technical terms of the term alibi, the same was sufficient; although the special charge submitted by the defendant has been approved by this court. It is the better practice not to attempt to define technical terms.

**7.—Same—Charge of Court—Circumstantial Evidence.**

Where upon trial for murder, the res gestæ declaration of the deceased took the case out of the rule of circumstantial evidence, there was no error in failing to charge on this subject.

**8.—Same—Charge of Court—Degree of Murder.**

Upon a trial for murder it was proper for the court to charge the jury that if they had a reasonable doubt as to the degree, to find the defendant guilty of murder in the second degree, in the event they found him guilty.

**9.—Same—Verdict—Amendment by Court.**

Where upon trial for murder, the court did not charge on manslaughter but only charged upon murder in the first and second degree, and the jury returned a verdict for five years, without stating the offense of which they found defendant guilty, the action of the court in amending the verdict to conform to the charge, and inserting the words " murder in the second degree," the jury acquiescing therein, was proper; although the foreman, in answer to the remark by the court: " You have not said what you find him guilty of," replied: " Manslaughter or murder in the second degree."

**10.—Same—Conviction Upon Res Gestæ Declaration of Deceased.**

Where upon trial for murder, the State's testimony not only showed ill-feeling between the defendant and deceased, but the res gestæ statement by deceased to three or four witnesses, within ten minutes after the shooting, showed that deceased was approaching his home at night, when defendant stepped from behind the house and shot him, a conviction of murder in the second degree with the minimum punishment is sustained.

Appeal from the District Court of Freestone.   Tried below before the Hon. L. B. Cobb.

Appeal from a conviction of murder in the second degree; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Daviss & Williford,* for appellant.—A defendant is entitled to trial by a jury drawn in strict accord with the requirements of law, whether he demands such jury or not, and without regard to whether or not he points out and directs the manner in which such jury shall or shall not be drawn.   Constitution of Texas, article 1, section 19.   Frasher v. State, 3 Texas Crim. App., 271; Adams v. State, 50 Texas Crim. Rep., 586, 99 S. W. Rep., 1015.

Evidence which is irrelevant and inadmissible, will be presumed to be injurious to the defendant.   If admitted over the objection of the defendant in a felony case, it will be presumed to have injured him. And when so admitted by the trial court, the judgment of conviction should be set aside in a felony case and the cause remanded to lower court for a new trial.   Somerville v. State, 6 Texas Crim. App., 435; Preston v. State, 4 Texas Crim. App., 201; Tyson v. State, 14 Texas Crim. App., 389.

It is not competent to introduce the clothes of deceased before the jury, unless the clothes were pertinent to some controverted issue in the case.   And, their introduction, otherwise is reversible error.   Tyson v. State, 14 Texas Crim. App., 389.

Evidence which does not tend to prove a material issue in the case is not admissible.   And, the fact that defendant had a pistol in his own home three months before date of alleged shooting of deceased, and never having been seen with a pistol thereafter, and the wound which caused death of deceased not having been proven to have been made with a pistol of the character and caliber of the one seen in defendant's possession, such proof was irrelevant, immaterial, and too remote, and should not have been admitted for any purpose.   McCullough v. State, 23 Texas Crim. App., 636

Only the jury, in felony case, can render a verdict against the defendant on trial; and their verdict shall be of their own finding, without suggestion from the trial court.  Texas Constitution, article 1, sections 10–15, etc.  Penal Code, article 712.  Follis v. State, 51 Texas Crim. Rep., 186, 101 S. W. Rep., 245.

*F. J. McCord,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of murder in the second degree and his punishment assessed at confinement in the penitentiary for five years.

Appellant's bill of exceptions No. 1 shows the following:  The defendant waived a special venire.  The clerk wrote the names of the regular jurors on a slip of paper and handed said slip to the defendant's attorneys to pass on, and the talesmen summoned to complete said panel were impaneled in the same way.  Neither names of the regular jurors, nor the names of the talesmen were written on separate slips of paper, nor were said names put into a box or any other receptacle and mixed, nor were they drawn from a box or any other receptacle, and the entire impaneling and organizing of the jury was completed without the defendant being present.  To the method of impaneling the jury the appellant objected in open court because the method pursued was not in accordance with the requirements of the statute.  The court approved the bill with this qualification:  "The case was set on September 3 for trial on the 12th of September, 1907.  The defendant's counsel waived a special venire, when the time came to organize the jury, defendant being present in the court room.  The jurors for the week were called in when counsel said they objected to the manner of impaneling the jury.  The court not understanding what counsel meant, remarked that if they demanded a special venire they might have it.  Counsel replied that they had waived a special venire and did not ask for it.  The court then said you may take your choice, take a list as usual or examine the jurors one by one as though they were special venire.  Counsel made no reply, and without further indication what they meant by the objection took the list furnished by the clerk and after some question to the jurors, retired and made their peremptory challenges by the erasure of certain names from the list,—only six jurors were obtained and the sheriff under order of court summoned talesmen and a list of those found qualified was given defendant's counsel, who took the same without objection, and from the list the other six jurors were taken.  At no time did counsel intimate that they desired the jurors drawn, and the court was not aware till after the trial that they intended to be understood as objecting on that ground, and the court was wholly ignorant of the reason that counsel had in mind for objecting to the method of choosing or impaneling the jury.  If the defendant was absent from the court room at any time, his absence was voluntary and unknown to the court and if he failed to assist in selecting his jury,

it was of his own free will." Clearly under the explanation and modification of the bill by the court, there could be no serious criticism of its action. Appellant had waived a special venire and failed to indicate any objection to the court, such as they urged in the bill of exceptions. We accordingly hold there was no error in the impanelment of the jury.

Bill of exceptions No. 2 shows that the State's witness, Harrison Gambol, a brother-in-law of the deceased, was permitted to produce as evidence before the jury an empty cartridge shell of the caliber 38–40, U. M. C., and to testify that he found said empty cartridge shell in his cotton patch four hundred or five hundred yards west of where deceased was shot, and in the opposite direction from. defendant's home; that there were no tracks leading from said empty cartridge shell toward the place where deceased was shot, nor toward defendant's home, nor any tracks leading from where deceased was shot to where said shell was found; to which testimony defendant's attorneys objected and asked that it be excluded from the jury, because there was no evidence that deceasd was shot with a ball or bullet of this caliber, nor was there any evidence which identified or in any manner sought to establish that defendant, or any other person, ever owned or had or saw a pistol or rifle, or gun of this caliber. Because the testimony was too remote, and said shell was found too far removed from the scene of the shooting to shed any light upon it or serve as a circumstance to explain it, or identify the person who did the shooting; that said testimony could and did serve no other purpose except to prejudice the minds of the jury against the defendant; all of which objections were overruled by the court and the bill was signed with the following qualification: "The witness stated that he found the shell as he was crossing the field and did not trace the tracks." We hold that said testimony was not admissible. It could not shed any possible light upon the perpetrator of this homicide, nor could it possibly show any connection of appellant therewith. The evidence for the State in substance shows that deceased was shot while going from Harrison Gambol's home, about two hundred yards away from his home to the home of the deceased, the shooting taking place very close to deceased's home. Upon being shot, the deceased holloed: "O! Lordy, I am shot!" His brother-in-law came out on his gallery, upon hearing the shooting and holloing. The deceased called witness and told him to come there. Witness told deceased to come to him. Deceased again holloed, "O! Lordy, I am shot!" Witness went to meet him about thirty or thirty-five yards from witness' house; deceased was staggering; witness caught hold of him and laid him on a pallet "my wife made down on the floor for him. I then asked him who shot him and he said 'Columbus Tinsley' shot me." Deceased said appellant came from behind the corner of the house and shot him. "When deceased called me, he was coming towards my house. He called Mr. Drake, and also called Nancy Jackson." When the constable arrested appellant on the morning after the killing, he was in his

father's field plowing. The constable told him that John Waters got shot last night and that he had a warrant for his arrest, charging him with the shooting. Appellant said, "All right, but I did not do it; I did not leave home last night." The constable further stated that appellant did not appear disturbed or frightened or in any way out of the ordinary bearing when he arrested him. This testimony was only controverted in part by three or four witnesses and appellant, as far as the declaration of the deceased was concerned. Several witnesses for appellant swore that they heard the shot, heard deceased hollo, "O! Lordy, I am shot. Harrison, run here." That Harrison Gambol replied, "No, you come here"; that deceasel said, "No, I am shot; I can't come there." Harrison replied, "Who shot you?" Deceased said, "I don't know." Appellant, as stated introduced several witnesses who swore that this was the res gestæ statement made by the deceased.

Now, the question recurs, in the light of this record and the above statement of the facts, did this testimony about the cartridge, which was found four or five hundred yards away from the deceased's house, where he was shot, in any way injure the rights of the appellant. We say no. If the testimony had shown that a track had been traced from deceased's house to where the cartridge was found, without in some way identifying the track with the track of appellant, it could not help the State's case; and the bill of exceptions shows, with the qualification of the court thereon, that no effort was made to trace the tracks, or any tracks, or to ascertain the size of any tracks around the place where the cartridge was found and the testimony, as appellant insists, is too remote and throws no light upon the transaction. Then if it does not, in the light of the above statement of facts, how could it injure appellant? In other words, the bill merely shows that the witness swore that he found a cartridge four or five hundred yards from the scene of the shooting. There is no effort to identify it with any cartridge appellant had, no effort to show that the cartridge was the same size of the bullet in the body of deceased, nor in any way connected, as far as this bill shows, the cartridge with the killing. It is not all evidence that will reverse a case but it must be of such a character that it would have a tendency to prejudice appellant. One of the safe rules in ascertaining whether it prejudiced appellant is the question, did the evidence in any sense tend to strengthen the State's case? By no process of reasoning can it be so construed. Then, how could it hurt appellant if it did not help the State? It is an isolated incident, disconnected from and disassociated from and in no sense connected with anything pertaining to this case; and while it is clearly inadmissible, its introduction was entirely harmless. We accordingly hold, that, while inadmissible, it was not such error as would authorize a reversal of this case.

Bill of exceptions No. 3, shows, that the State introduced the clothing of deceased in evidence, and one of the attorneys for the State shook said clothing around before the jury and commented on same, to which

introduction of said clothing, and the display and commenting on same was all objected to by the defendant at the time, upon the following grounds: 1. There was no question or controversy as to the character, condition or location of the wound. 2. There was no question or con- troversy that it was a fatal wound and was the cause of deceased's death. 3. There was no question or controversy as to the direction of the ball or the extent to which it penetrated; that said testimony did not tend to illustrate any point, or make manifest or throw any light on any issue in the case; and, lastly, that it did tend to prejudice the defendant before the jury. The court overruled said objections and admitted said clothing in evidence with said display of same, and the comment thereon. This bill is approved with this modification: "Appellant objected to showing the clothes to the jury, as they were being used by the State's witness to locate the point of entering of the bullet. The clothes had been washed and showed only a small hole where the witness said the bullet entered. The court thought the garment was admissible for that purpose. No one attempted to inflame the mind of the jury by referring to them. The State's attorney merely showed the jury where the ball entered the clothes and laid them on a chair or table before the jury.

This evidence is very much like the evidence above complained—inad- missible. As appellant insists, there was no question but what the bullet killed the deceased; there was no question as to where it entered his body. While the bill complains of comments upon the clothing, it does not show what the comments were and hence said comments can not be passed upon by this court. The court, however, says there was no attempt to inflame the minds of the jury by referring to them; that the State's attorney merely showed the jury where the ball entered the clothing. These clothes ought not to have been admitted. They did not illustrate or make manifest any issue in the case, or demonstrate any controverted fact, but this would not call for a reversal of the case. How, or in what way could the sheer fact of bringing the clothes and showing where the bullet entered them injure appellant? Appellant had never controverted the fact as to where the bullet entered the cloth- ing, then to prove by the clothes themselves where the bullet entered, could not prejudice him in the trial of this case. The court says the clothes had been washed. This would eliminate any gruesome appearance and prejudicial effect they might have had, if they had been bloody. We have repeatedly and repeatedly held that this character of evidence should not be introduced, unless the clothes were pertinent on some controverted issue in the case. We have never held, however, that we would reverse a case where our attention has been called to the sheer fact that clothes were introduced. Their introduction in this case is rendered entirely harmless in the light of this bill. In other words, the clothes merely show, as shown by the bill, where the bullet entered. This was not con- troverted. Then to prove a fact that was not controverted by the clothes or any other method, or means, could not be a basis for reversing

a case. We hope trial courts, however, in the future will not permit clothes introduced unless they do bear on some pertinent relation to the trial of the issue then being passed upon. We accordingly hold that the error was harmless in the light of this record.

Bill of exceptions No. 4, shows that the State's witness, Sam Thomas, testified that he was at the house of the defendant's father on the second Sunday in November, A. D., 1906, before the alleged shooting on February 8, 1907; that defendant lived with his father and mother; that defendant had just stepped outside of the house and came back into the room where he, witness, was and took a pistol out of his pocket and put it on the table, and that he did not know what was the size or caliber of the pistol, nor to whom it belonged. To the introduction of this testimony, appellant objected on the ground that it was irrelevant, immaterial and too remote to shed any light upon the transaction under investigation, or to be considered even as a circumstance in connection therewith, and because said testimony was evidence of another and different and distinct and separate offense, if evidence of anything, which was in no way connected with, or served to explain the matter under investigation. The testimony is neither irrelevant, immaterial or too remote. It is true it sheds very little light upon the transaction under investigation, but to prove that the appellant, a short while before, was seen carrying a pistol, and the circumstances of this case show with reasonable certainty that the shot that killed deceased was from a pistol, is a small circumstance or criminative fact going to connect appellant with this homicide. The fact that it proved very little against him did not preclude its admissibility. The weight of the testimony is for the jury, and the sheer fact that it had very little criminative effect, if any, would not exclude it, and the fact that he was seen with a pistol, being another offense, would not exclude the proof of the fact in the subsequent trial of appellant for homicide. We can readily see one or two cases where the evidence could be used as stated. For instance, the jury may say it shows a familiarity with the use of firearms. The fact of carrying it, would carry with it the suggestion that he knew how to use it, and to this extent would be criminative, though perhaps a small criminative fact against appellant. A great many people know how to use firearms. This fact could be used by appellant against the probative force of the testimony, but it would not preclude its admissibility in the trial of appellant, for homicide. The testimony was admissible.

Bill of exceptions No. 5, shows the following: The State introduced Harrison Gambol, Missouri Gambol, Nancy Jackson and M. M. Drake, who testified to the following: "That after the deceased had gone to Harrison Gambol's house and had been carried into Gambol's house and laid on a pallet, Harrison Gambol asked him, 'Who shot you?' and the deceased replied: 'Duke Tinsley.' Still later, in reply to the same question from Nancy Jackson, he answered: 'Duke Tinsley'; and still later in reply to the same question from M. M. Drake, he answered,

'Duke Tinsley.' " Appellant objected to same because it was not the facts talking through the witness, but the witness talking about the transaction, which had been over ten minutes or longer. It was not the first statement he made, and being made after he had become composed and had time for reflection, was not admissible as res gestæ; that it was hearsay and too remote to bring it within the exception. This bill is approved with the following modification: "The testimony of Drake shows that it could not have been ten minutes from the shooting till all these statements were made, and they were admitted as res gestæ." The statement of facts shows that the appellant was known by the name of "Duke Tinsley." The explanation of the court shows clearly that the testimony was res gestæ, and therefore clearly admissible. Mahoney v. State, 50 Texas Crim. Rep., 17 Texas Ct. Rep., 118.

In his motion for a new trial, appellant complains that the court erred in refusing to give the following charge: "Gentlemen of the Jury: The defendant in this case has introduced evidence that at the time the deceased was shot, if he was shot, he the defendant, was not at the place where the shooting occurred; this in law is termed an alibi, which is defined thus: When a person charged with a crime proves that he was, at the time alleged, in a different place from that in which it was committed; therefore, you are instructed that if you entertain from the evidence in this case, a reasonable doubt of the presence of the defendant at the place where deceased was killed, at the time of the killing, and if, from the evidence you entertain a reasonable doubt that at that time he may not have been elsewhere, he is entitled to the benefit of such doubt, and you will acquit him." This charge has been approved by this court. See Caldwell v. State, 28 Texas Crim. App., 566; Hill v. State, 37 Texas Crim. Rep., 415; Watson v. State, 28 Texas Crim. App., 34. It is the better practice not to attempt to define technical terms, such as alibi, as appellant insists. Often it is unintelligible to the jury.

Appellant complains that the court failed to charge the jury on the law of circumstantial evidence. In this there was no error, since the res gestæ declaration of the deceased takes the case out of the rule of circumstantial evidence.

Appellant complains of the following charge of the court in bill No. 10: "In case you are satisfied beyond a reasonable doubt that defendant is guilty of murder, but have a reasonable doubt as to the degree, you will give him the benefit of the doubt and convict of murder in the second degree." Appellant objects to this charge on the ground that the same is on the weight of the evidence, and is an intimation to the jury that the court thought the defendant guilty of murder in some degree. We can not see how, or in what way it was a charge on the weight of the evidence, or an intimation to the jury that the court thought appellant guilty of murder in some degree. It is always proper for the court to charge the jury that if they have a reasonable doubt as to the degree, to find the defendant guilty of murder in the second degree.

Bill No. 11 complains of the following: After the jury had retired

for a day and a half and a night, they came into the court, and the court asked them if they had agreed on a verdict. The foreman said they had. The verdict was handed to the court, and same read as follows: "We, the jury find the defendant guilty and assess his punishment at confinement in the State penitentiary for a term of five years. G. W. Williamson, foreman." Whereupon, the court remarked: "You have not said what you find him guilty of." The foreman replied: "Manslaughter, or murder in the second degree." The court at once wrote a line in the verdict, so as to make it read, as follows: "We, the jury, find the defendant guilty of murder in the second degree and assess his punishment at confinement in the State penitentiary for a term of five (5) years. G. W. Williamson, foreman." The court then read the verdict as he had revised it, and asked: "Is that your verdict?" Some of said jurors said yes, some nodded their heads, and some said nothing. Appellant complains that this action of the court was without authority of law, was an invasion of the province of the jury, was without the sphere of the court's duty and wholly beyond its power and authority. This bill is approved with the following modification: "The jury was organized on the twelfth, 1907, and the trial was concluded about 6 p. m. the thirteenth, 1907, and the jury came in with a verdict about 5 p. m. on the fourteenth. Verdict was as above quoted and did not designate the offense, and the court then asked the jurors of what offense they had found the defendant guilty, and one of them (the foreman as now remembered) said, "of murder in the second degree or manslaughter," to which the court replied that they could not convict of manslaughter but of murder only and then the juror replied, "of murder in the second degree then," or words to that effect and the court wrote in the words, "of murder in the second degree," and read the verdict as so amended to the jurors, and asked them if that was their verdict and they all signified their assent by words or nods. The defendant and his attorneys were present but did not object to the proceedings, and only after the jury had been discharged did one of the defendant's counsel suggest to the court that there might be error in the matter." The court in this case did not charge upon manslaughter but only charged upon murder in the first and second degrees. The jury brought in a verdict of five years which merely meant murder in the second degree. Therefore, the action of the court could not have been prejudicial to the rights of appellant in making the verdict formal as is required by law, and especially so with the jury acquiescing and consenting thereto.

The appellant further insists that the evidence is insufficient to support this verdict. The facts show that defendant and deceased had one or more difficulties a few months prior to the difficulty in which deceased lost his life; in one of which previous difficulties deceased shot at the appellant, thus showing the bitterest character of feeling from the State's standpoint. It is true that appellant denies the latter statement and says that he and deceased had made friends. The State's evidence further shows that deceased was approaching his home about 8 o'clock

at night, as above stated, when appellant stepped from behind the house and shot him. This statement was made by deceased to three or four parties within ten minutes after the shooting. This res gestæ statement has the same force and potency in law as dying declarations and in effect, is perhaps, a stronger criminative statement. Many cases in the books report a conviction upon dying declarations of the deceased, alone. We, therefore, accordingly hold that the jury, having passed upon the credibility of the witness, that the evidence in this case warranted their finding him guilty. It may be that in sheer deference to the evidence, the jury gave him the minimum punishment for murder in the second degree, but this would not be an argument in favor of the proposition that the evidence would not support a conviction for murder in the first degree.

So believing, we hold that the evidence in this case is sufficient to support this verdict, and finding no error in the trial thereof, the judgment is in all things affirmed.

*Affirmed.*

Henderson, Judge, absent.