Everett Atwood v. The State.

No. 6299.   Decided October 5, 1921.

1.—Murder—Manslaughter—Circumstantial Evidence—Rule Stated—Charge of Courts.

Where defendant was charged with murder and convicted of manslaughter, and contended that the evidence was wholly circumstantial, but the record showed on appeal that the deceased had made a dying declaration that he was shot by the defendant and there was other evidence of a direct nature, there was no error in refusing a charge upon circumstantial evidence.

2.—Same—Rule State—Circumstantial Evidence—Res Gestae—Dying Delcaration.

In the case in which there is proof that the deceased, either in a dying declaration or *res gestae* statement declared that he was shot by the accused, a charge on the law of circumstantial evidence is not required. Following Potts v. State, 56 Texas Crim. Rep., 43, and other cases.

3.—Same—Rule Stated—Circumstantial Evidence—Direct Evidence.

In a case of homicide, direct testimony from any source that the accused was an actor in bringing about the death of the deceased characterizes the case as one of direct and not of circumstantial evidence. Following Barnes v. State, 50 Texas Crim. Rep., 629, and other cases.

**4.—Same—Juxta-Position—Circumstantial Evidence—Charge of Court.**

Where, upon trial of murder and a conviction of manslaughter, the evidence showed that defendant was brought into such close *juxta-position* to the main fact in issue as to render a charge on circumstantial evidence unnecessary, there was no reversible error. Following Cabrera v. State, 56 Texas Crim. Rep., 149, and other cases.

Appeal from the Criminal District Court of Harris. Tried below before the Honorable C. W. Robinson.

Appeal from a conviction of manslaughter; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Harry C. Gerlach* and *F. Charles Hume, Jr.,* for appellant.—On question of circumstantial evidence: Hunt v. State, 7 Texas Crim. App., 212; Black v. State, 18 id., 124; Counts v. State, 19 id., 452.

*C. M. Cureton,* Attorney General, and *C. L. Stone,* Assistant Attorney General, for the State.—Cited cases in opinion.

MORROW, Presiding Judge.—Appellant, charged with murder of Moseley, was convicted of manslaughter. He contends that the evidence is wholly circumstantial.

At night, while in the hall of the apartment in which both the deceased and appellant lived, the deceased received a wound from a pistol shot, taking effect in his abdomen, from which he died. There was no light in the hall, which was on the second floor, save that which came from the light in the hall below.

The wife of the deceased had been confined to a room for a month partly due to an accident and partly to a miscarriage. It is claimed by Mrs. Trott, the owner of the apartment, that Mrs. Moseley had become insane to a degree which rendered her dangerous to the other occupants of the apartment. Because of this belief on the part of Mrs. Trott, she insisted that Mrs. Moseley be taken to a hospital pending her recovery, and also claimed that the words and conduct of Moseley, the deceased, towards her in her demand for removal were insulting. Her husband, being absent, she called upon her brother, Ainsworth, to discuss the matter with Moseley. For this purpose Ainsworth came to the apartment late in the afternoon on which the homicide occurred, his wife accompanying him. Mrs. Trott, Ainsworth and wife, and three men who were occupants of the apartment, went into the apartment occupied by appellant and his wife, which was on the same floor with that of the deceased, and there remained until Moseley was heard to come in to his apartment. The doctor who was attending Mrs. Moseley was accosted by Ainsworth, who expressed a desire to see Moseley. He was informed by the doctor that Moseley was attending his wife but that her removal to the hospital had been arranged for the succeed-

ing morning. Ainsworth, however, according to some of the testimony, knocked upon the door of the Moseley apartment and Moseley came out into the hall and there a conversation took place which culminated in an affray which ended in the tragedy. During the disturbance in the hall, parties in the Moseley apartment, according to their testimony, heard various remarks; among others, Moseley said: "We can't move her tonight but will move her tomorrow. Ain't that fair enough?" to which a reply was made: "No, by God." This, according to some of the witnesses, was followed by a sound of a blow; and about the same time one of the parties in the hall was heard to say: "Lookout for the gun," and Mrs. Ainsworth was heard to say: "Shoot the one-eyed son-of-a-bitch;" and after the shot was fired to say: "That is the way to do it."

Before the difficulty, appellant had in his room a pistol of 32-caliber, and the evidence, while conflicting, is sufficient to establish his possession of the pistol at the time of the encounter. This pistol, after the encounter, was found to have been fired, and the wound inflicted was by a ball of the same character.

At the beginning of the difficulty, Mrs. Moseley, according to her testimony, saw throught the door, both Ainsworth and appellant; and Rouss, a half-brother of deceased, just before going into the hall, heard Moseley say: "That is fair, ain't it?" and also heard appellant remark: "By God, she is able to go and you are going to take her," and as he stepped into the hall, saw Atwood, the appellant, strike the deceased. As the witness was about to enter the fight, Ainsworth struck him with a pistol. In the struggle that ensued, Rouss endeavored to take the pistol from Ainsworth and it was thrown upon the floor and seized by Mrs. Ainsworth, she attempting to shoot Rouss, but he succeeding in knocking the pistol out of her hand, when it fell on the floor and through the banisters and down the stairway. In the meantime, according to the witness Rouss, the deceased and the appellant were engaged in a fight, and Mrs. Ainsworth said: "Shoot the one-eyed son-of-a-bitch." Moseley was endeavoring to take the pistol away from Atwood, and while doing so, the pistol in Atwood's hand was fired and Moseley fell, exclaiming: "Atwood shot me."

Rouss said: "I didn't exactly see the gun in Atwood's hand. I could not see it right in his hand, but I seen the shot when it appeared right from his hand,—the flash from the pistol."

The doctor, who was present, and Mrs. Moseley, each testified to the exclamation on the part of the deceased as he fell: "Atwood shot me," and he said to Mrs. Moseley: "My God, Gene, Atwood shot me."

The testimony of Mrs. Trott, on cross-examination, and of Mrs. Cook and her two daughters, was in conflict with the theory that the appellant, Atwood, was present at the beginning of the affray. They claimed that he was then in his apartment and one of them said that he picked up his pistol and said to Mrs. Trott: "Take this gun out of

here before somebody gets hurt," and that Mrs. Ainsworth and Rouss both made a break for it. These witnesses, however, as soon as possible after the difficulty began, left the scene and went downstairs. Afterwards when Mrs. Trott returned she inquired of Moseley who had shot him, and he said: "I don't know; I am done for."

When Lucile Cook returned to the room of Atwood after the difficulty, she saw him with wounds on his head which his wife was dressing, and a bloody towel present, and Ainsworth, also wiping blood from his head and having two pistols with him, was present. He declared: "I will take the blame for this. I did it."

Ainsworth's pistol was not fired. Mrs. Ainsworth claimed a privilege of silence on account of the danger of prosecution to herself and husband; and neither Ainsworth nor appellant was used as a witness.

Prior to the altercation, the relations between the appellant and the deceased were friendly. It has frequently been decided that in cases in which there is proof that the deceased, either in a dying declaration or *res gestae* statement, declared that he was shot by the accused on trial, a charge on the law on circumstantial evidence is not required. Smith v. State, 21 Texas Crim. App. 307; Potts v. State, 56 Texas Crim. Rep., 43; Crews v. State, 34 Texas Crim. Rep., 543; Polk v. State, 35 Texas Crim. Rep., 495; Jones v. State, 52 Texas Crim. Rep., 305; Hernandez v. State, 47 Texas Crim. Rep., 21; Tinsley v. State, 52 Texas Crim. Rep., 91. We are unable to perceive a distinction between the facts in the cases mentioned and the one before us, nor to discern any reason for regarding the rule unsound. The declarations of the deceased, being direct statements identifying the accused as the assailant and not of collateral facts from which the inference might be drawn, are received as original evidence which the jury is privileged to accept as true, and being so accepted must be regarded as direct and not as circumstantial evidence. Tooney v. State, 8 Texas Crim. Appeals, 459. The testimony of several witnesses was definite and specific that the deceased, immediately after he was shot, declared that appellant shot him. This declaration was, in no sense, less specific than those found in the former decisions to which we have referred. The rule mentioned is in consonance with the general principle often applied and illustrated by the decisions of this state to the effect that in the case of homicide direct testimony from any source that the accused was an actor in bringing about the death of the deceased characterized the case as one of direct and not of circumstantial evidence. Barnes v. State, 53 Texas Crim. Rep. 629, and other cases collated in Branch's Ann. Tex. Penal Code, Sec. 1874, page 1040. We regard the case before us, however, as one in which there are other facts in evidence which classify it as one resting upon direct as contradistinguished from circumstantial evidence. The testimony of Mrs. Moseley to the effect that during the altercation in which her husband participated and about the time she heard angry words and the sound of blows struck, she

saw both Ainsworth and the appellant present; that she heard Mrs. Ainsworth command some one to shoot, considered in connection with other testimony to the effect that both appellant and Ainsworth were armed; that Ainsworth's pistol was knocked out of the hands of Mrs. Ainsworth and fell down the stairway and was not fired; that appellant's pistol was fired and the testimony of Rouss that in the conflict he was engaged in the struggle with Ainsworth in which the wife of Ainsworth took part while the appellant and Moseley were fighting and struggling over the possession of the pistol, which during the struggle was fired, and the flash of it seen coming from the hand of Atwood, the appellant, the deceased at the same moment falling to his knees wounded, to our minds render it certain that there was direct evidence that the appellant was one of the participants in the affray in which the deceased was killed, and that in view of such direct evidence, it cannot be justly said that the case against him is one resting upon circumstantial evidence alone. Moreover, the evidence to which we have adverted bring the appellant into such close *juxta-position* to the main fact in issue as to render the charge on circumstantial evidence unnecessary. Among the cases illustrating this view are: Cabrera v. State, 56 Texas Crim. Rep., 149; and Crows v. State, 34 Texas Crim. Rep., 543.

The judgment is affirmed.

*Affirmed.*