## Johnson v. Commonwealth.

(Decided October 6, 1925.)

Appeal from Pike Circuit Court.

1.  Intoxicating Liquors—Evidence Held Insufficient to Show that Accused was Guilty of Manufacturing Intoxicating Liquor.—Evidence that accused was identified as man carrying still, and that nearby were still sites and material which could be used in manufacture of liquor, held not sufficient to convict of manufacturing intoxicating liquors, in absence of proof that intoxicating liquor was actually manufactured.
2.  Criminal Law—Proof of Possession of Means of Committing Offense is Not Alone Sufficient to Show Offense was Committed.—

Proof of the possession of the means of committing offense is not alone sufficient to show that the offense was committed.

PICKLESIMER & STEELE for appellant.

FRANK E. DAUGHERTY, Attorney General, and GARDNER K. BYERS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

On his first trial for the offense of manufacturing intoxicating liquor appellant was convicted. On appeal the judgment was reversed for error in the instructions, the court declining to pass on the sufficiency of the evidence to take the case to the jury. Johnson v. Commonwealth, 202 Ky. 714, 261 S. W. 255. On the return of the case appellant was again convicted, and he now insists that the evidence was wholly insufficient either to sustain the verdict or to require the submission of the case to the jury.

The evidence may be summarized as follows: Creed Bentley, a federal prohibition agent, went up the creek above appellant's home accompanied by Kennis Lowe and Mat Sanders. Looking across from where they were sitting he saw "some man going around the hill with a still on his back." He trailed the man and found he had hid the still. They then went over the point into the hollow and into a field and found two barrels and two places where a furnace had been. Some distance away there were four barrels and some wash tubs. After seeing the man go over the point and finding the still he looked over into the corn field and saw appellant going down the hollow with a load of fodder. They let him go on down to the house before they said anything. He did not observe any still slop on his clothing. He tracked him from where he saw him carrying the still to where he found the still. He then tracked him from there on down to where he saw appellant in the corn field. Appellant had some fodder on his back as he went through the field. The material that he found was the class of stuff used in the manufacture of intoxicating liquor. On cross-examination he said that John Ray's house was the closest one to the still. One of the still sites was on his land and the other one on John Casebolt's land. He was not absolutely positive that it was appellant who was carrying the still. He was not close enough to observe his features, "but it looked like the same clothes." On re-examination witness stated that they tracked appellant

from the still down to where they saw him in the corn field. After that they saw him carrying fodder. He had a sweater on and there were pieces of fodder on his clothing.

Mat Sanders testified that they found a still in the hollow, some tubs over in the other hollow and some fresh raked-out places to be used for a furnace. The still and material they found were such as were used in the manufacture of intoxicating liquor. While there he saw a man in the field carrying a bucket or a tub, and then saw him carrying fodder through the field. He carried the tub down below where he got the fodder and then came back and got the fodder. He was not close enough to tell what kind of a tub it was. The still they found was in the other hollow across the point from the tubs. There was a fodder shed there and he asked the lady whose it was. She said it was Toddy Johnson's. He then went and saw Toddy at the store and said, "The woman swore you carried that fodder down to the shed," and he said, "I did." Toddy Johnson said that he tended that field.

Kennis Lowe testified that they were on one side of the hollow and the man they saw carrying the still on his back was on the other side. When he went out of sight he and Creed Bently went one way and Mat another. He was up above them and found the still in the tops of a tree. The other boys found the tubs in the other hollow.

Appellant testified that the still which the officers found was on John Casebolt's land. Two of the barrels were on John Casebolt's land and the other two on John Ray's land. No part of the outfit or material was in the field which he tended. He was not in possession of the field, but had some fodder there. His rental contract had expired. He did not carry the still. He went around the flat and got an old wash tub and brought it around and set it down to water some cows. He then went and got some fodder. He could not carry the tub and John Ray's wife came over and said it was John's tub and took it herself. The still and material were not his, nor in his possession, and he had nothing to do with them.

Sherd Osborn testified that the still that was cut up by Creed Bentley and the other officers was on John Ray's land. He had contracted to buy the still from John Ray and had paid him $20.00 for it. Ray was going to deliver it the night after it was cut up. Ray returned the money that night.

On being recalled appellant testified that he did not borrow the still nor did he have any interest in the still or barrels that they found. He also added that John Ray had been away ever since the raid was made.

Appellant's affidavit for a continuance, stating that Tommie Anderson, if present, would testify that he sold the still to John Ray and that John Ray would not pay him for it after it was cut up, was also admitted in evidence.

The indictment charged several violations of the Prohibition Act, and to avoid the effect of the demurrer the Commonwealth elected to try appellant on the charge of manufacturing intoxicating liquor. To sustain this charge it was necessary to show, either by direct or circumstantial evidence, that appellant actually made intoxicating liquor. In view of the fact that Mr. Bently was unable to distinguish appellant's features, but concluded that he was the man seen carrying the still because their clothes looked alike, it is at once apparent that the identification of appellant as the man carrying the still is by no means satisfactory; but, if we assume that the evidence was sufficient to show that appellant was the man who carried the still and that nearby were still sites and material that could be used in the manufacture of liquor, this evidence was not sufficient to prove appellant's guilt in the absence of other evidence that intoxicating liquor was actually manufactured. In other words, proof of the possession of the means of committing an offense is not alone sufficient to show that the offense was committed. It follows that the evidence was insufficient to take the case to the jury.

Judgment reversed and cause remanded for a new trial consistent with this opinion.