## CLARENCE J. CULVER *v.* STATE OF MARYLAND

[No. 220, Initial Term, 1967.]

408

*Decided June 7, 1967.*

The cause was argued before ANDERSON, MORTON, ORTH, and THOMPSON, JJ., and O'DONNELL, J., Associate Judge of the Eighth Judicial Circuit, specially assigned.

*Michael Lee Kaplan,* with whom was *Morris Lee Kaplan* on the brief, for appellant.

*Frank A. DeCosta, Jr., Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *John H. Lewin, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

PER CURIAM.

On June 29, 1966 appellant was convicted of rape by a jury in the Criminal Court of Baltimore, Judge Joseph L. Carter, presiding. He was sentenced to imprisonment for the balance of his natural life.

Appellant raises five contentions on this appeal:

1) The court erred in refusing to grant motions for judgment of acquittal.

2) The verdict was against the weight of the evidence.

3) The court erred in admitting in evidence certain testimony and a photograph.

4) The court erred in its instructions to the jury.

5) The court erred in its voir dire examination of the jury.

## (1) and (2)

Appellant's first and second contentions are considered together. At the close of the evidence offered by the State, the appellant moved for a judgment of acquittal which was not granted. Thereafter appellant offered evidence and by so doing withdrew his motion. Maryland Rule, 755 b. Appellant moved again for a judgment of acquittal at the close of all the evidence and the motion was not granted. When a case is tried by a jury, and the point is properly raised, as it was here by the latter motion, this Court determines the sufficiency of the evidence to take the case to the jury, but does not weigh the evidence presented to the jury. *Ramsey v. State,* 239 Md. 561 (1965). In order for us to overturn a judgment entered on the verdict of a jury for insufficiency of the evidence it is necessary to show that there was no legally sufficient evidence, or inferences drawable therefrom, on which the jury could find a defendant guilty beyond a reasonable doubt. *Royal v. State,* 236 Md. 443 (1964). So the scope of our review is not to determine whether the State has proved its case beyond a reasonable doubt, but whether there was any relevant evidence properly before the jury which would sustain the conviction. *Tull v. State,* 230 Md. 596 (1963) ; *Fowler v. State,* 237 Md. 508 (1965).

Joan Cobbs, age 16 years, testified that about 2:00 P. M. on November 17, 1965 she was waiting outside the Royal Theatre on Pennsylvania Avenue in Baltimore City for her mother,

who was to bring her money to go to the show. Two men, about 20 years of age, walked up to her and asked if they could buy her a soda. One was tall, light complexioned and "had a lot of bumps on his face, and he had wide eyes." The other was short and light complexioned. At first she refused but then went with them into a store a few doors from the theatre because it was cold outside. The store was the Royal Grill. She identified the appellant, who owned the store, as being there when they went in. The men bought her a soda and she drank some of it. The tall man asked her if she wanted to go in the back room and she said no. He said he wanted to talk to her about something and when she still refused, he grabbed her and took her into the back room with the help of the short man. Appellant was behind the counter while this was done. They threw her on a "sofa-like thing." Appellant came into the room and watched while the tall man pulled her dress up and took off her girdle. She screamed and resisted and the short man threatened to hit her if she did not keep quiet. The short man and the appellant held her legs, spreading them apart, while the tall man had sexual intercourse with her. When she continued to scream the short man put his hand over her mouth. Then the short man had sexual intercourse with her, threatening her, for although she was "tired and everything" she was still trying to get away. Then the appellant had sexual intercourse with her. She was still trying to get away but was exhausted and could not do so. She tried to scream and he told her to be quiet. The tall man and the short man left while the appellant was raping her. She pleaded with the appellant to let her rest, and when he did so, she put on her shoes, grabbed her girdle and ran out. She saw a policeman across the street and asked him to please help her, that she had just been raped. The policeman asked her where and by whom and she pointed out the Royal Grill and described the men. When the policeman went to the door of the store it was locked and the lights were out. The appellant apparently had fled and a warrant was obtained for his arrest. He was apprehended on December 15, 1965 at 821 Pennsylvania Avenue in Baltimore City and was identified in a lineup by the prosecutrix. The Royal Grill was not open after November 17, 1965.

The medical testimony was that examination disclosed the victim's hymen was freshly torn, that the outlet was apparently virginal before the episode, that her vagina contained blood and seminal fluid and that a slide made was positive for spermatozoa. While her body showed no signs of injury, the thighs showed traces of blood near the vulva. At the time of the examination she was agitated and nervous. The diagnosis was evidence of forcible rupture of the hymen. The policeman verified that she told him she had been raped.

The trial judge was clearly correct in denying appellant's motion for a judgment of acquittal and we find that there was relevant evidence properly before the jury which would sustain the conviction.

(3)

We find no reversible error in the admission by the court of the evidence as set forth in appellant's third contention.

a) Generally speaking, to preserve an issue on appeal in regard to the admissibility of evidence, there must be an objection made to the question eliciting the allegedly objectionable answer. If counsel desires to preserve an objection to a line of testimony, this must be stated to the trial court and a continuing objection indicated. *Rose v. State,* 240 Md. 65 (1965); Maryland Rules, 522 b, d 2; 1085. Counsel for appellant did not preserve an objection to the line of questioning here alleged to have been admitted in error. The prosecuting witness was requested to tell what some of her interests were and when she said, "Well, I like dancing and—" an objection was made and overruled. She then continued her testimony by saying she liked dancing and singing and swimming and, in answer to further questions, that she liked church singing, and rock and roll and that she was "in a choir at the church." The answers to the latter questions were given without objection. In any event, the admission of irrelevant evidence will not require reversal if it appears that the evidence was not prejudicial. *Hopkins v. State,* 193 Md. 489 (1949). It does not appear to us that the testimony was prejudicial under the circumstances.

b) The objection to a photograph of the room where the offense took place was based on the fact that it was taken some nine days after the crime. Counsel did not question that the

photograph correctly depicted the room at the time the photograph was taken. The prosecuting witness testified that the room at the time of the crime was "Just as it is in this photograph." The Court of Appeals said in *Corens v. State,* 185 Md. 561 (1946) at page 570:

> "It is an unquestioned rule that photographs may be introduced in evidence, either in a civil or criminal proceeding, to illustrate the description of a person, place, or object so as to explain or apply the evidence. *Snowden v. State,* 133 Md. 624, 631, 106 A. 5. Whether a photograph is of any practical value in a particular case is a preliminary question for the trial court, and the court's exercise of discretion in determining the question is not open to review unless plainly arbitrary. Of course, photographs offered as exhibits should be correct representations of the person, place or object which they purport to represent at the time when the appearance of such person, place or object is relevant to the inquiry in connection with which the photographs are offered."

We do not think that the court's exercise of discretion in admitting the photograph in evidence was plainly arbitrary. See *Pearson v. State,* 182 Md. 1 (1943).

c) Appellant alleges that the question, "Did either man have difficulty performing a sexual act on you?", was leading, that it called for a conclusion and that it involved an act for which he was not charged. The question was asked before the witness testified that the appellant had raped her but after her testimony as to the conduct of the other two men. Assuming, arguendo, that the question was leading, the trial court may permit leading questions in its sound discretion. *Wolf v. State,* 143 Md. 489 (1923). The court does not appear to have abused its discretion with regard to this question. Other jurisdictions have held that leading questions are permissible to arrive at facts when modesty or delicacy prevents full answers to general interrogations and that rape cases, involving inquiry into delicate subjects of a sexual nature, constitute an exception to the general rule against leading questions. In such cases, the permitting

of leading questions of the prosecutrix, particularly if she is of tender years, is a matter of sound discretion of the trial court. *State v. Pearson,* 258 N. C. 188 (1962) ; *Commonwealth v. McGuiness,* 204 Pa. Super. 75 (1964) ; *State v. Bennett,* 158 Me. 109 (1962). After the witness answered that both of the men had difficulty performing the sexual act on her, the record discloses the following questions by the State and answers by the prosecutrix, given without objection :

"Q I mean, as a result of such difficulty, what if anything did either of them do?

A They asked the proprietor (appellant) for a jar of vaseline.

Q And did the proprietor bring them a jar of vaseline?

A Yes.

Q And what if anything did they do with the jar of vaseline?

A They put it on their penis."

We find appellant's allegations with regard to the question to be without merit and hold that there was no prejudicial error in admitting the testimony to which no objection was made.

d) Officer James Lang testified that about 5 :00 P.M. on November 17, 1965 he met the prosecutrix right across from the Royal Grill. He was asked by the State what, if anything, did she say to him, and over objection answered :

"She told me she had been raped. And I asked her where. And she pointed to a grill across the street, which was the Royal Grill. I immediately proceeded with her to the grill and found the door locked. I then asked her other questions pertaining to who and how many people. And, she said there were three, she gave me descriptions of the three."

No objection was made to testimony in response to questions as to what descriptions she gave. The ground for the objection made was that the witness did not make the complaint "close enough to time" of the crime. Appellant urged that by the testimony of the prosecutrix, the commission of the crime could not

have taken three hours. Her testimony was that she left immediately after appellant heeded her pleas to let her rest, that it was then getting dark, and that she ran right over to the police officer. On cross-examination appellant had attempted to impeach her testimony by questions to establish that she had consented, that appellant had not had intercourse with her and that her evidence was false.

The Court of Appeals held in *Shoemaker v. State,* 228 Md. 462 (1962) that evidence of the victim's complaint made while the alleged injury was recent is admissible. It quoted, at page 467, *Green v. State,* 161 Md. 75, 82 (1931) :

> "[T]he better rule, and the one more in conformity with our practice and decisions, is that, if the prosecutrix has testified to a violent assault, the fact of the making of complaint within a reasonable time under the circumstances is original evidence, and may be shown to prevent the inference that the woman did in fact maintain a silence inconsistent with her narrative at the trial; and if her testimony of the commission of the alleged crime be impeached by witnesses or by a cross-examination based on the defense that she consented or that her evidence is false, the terms and details of the complaint are admissible, preferably in rebuttal (a), as corroborative evidence, if made recently (b) after the commission of the alleged crime."

The conditions for the admission of the testimony of the police officer were fully met and we find no error in admitting it.

(4)

In its instructions to the jury, the court said,

> "At this point I should point out to you also because this case is, to a very great extent, a question of credibility, that the fact that there was a prior offense, or were prior offenses committed by the defendant, I think the record shows that he was convicted of burglary charges in 1956, for which he was sentenced. And that, I believe, there was a deadly weapon charge involved in that same case. And that he was also convicted of

an assault charge in Georgia around 1947 or 48, for
which a sentence was imposed. He says a jail sentence
and a fine and he paid the fine and did not serve the
jail sentence. But, in any event, prior convictions go
only to the question of credibility. You do not convict
this man because he has a prior record, regardless of
the nature of the offense. You will convict him or acquit
him today according to the evidence in this case.

But, I repeat that the record and the evidence of the
prior convictions goes only to the question of credi-
bility of the witness."

Out of the presence of the jury, the appellant's counsel indi-
cated he desired to except "* * * to that portion of the charge
which referred to details of the record and sentence of the de-
fendant in this case." The court offered to eliminate that por-
tion from the charge and when counsel said he didn't see how
it could be done, the court said, "I can tell them just to forget
it." Counsel responded, "Well, already been done." After fur-
ther discussion, during which counsel agreed that the charge
amply made clear that the convictions went only to the credi-
bility of the appellant, counsel said:

"I think otherwise that with regard, even though you
did make mention of that amply, tell them in fact not
to be held against him and that only to be held as to
credibility. But, I would prefer that the instructions
have been just to the fact that there was a record, and,
rather than the specifics of it."

The court said, "All right" and counsel said, "Otherwise have
no exception to the court's charge." The facts concerning the
convictions stated by the court in its charge to the jury were
admitted in evidence without objection and, in fact, in greater
elaboration. Maryland Rule, 756 f provides that the party ob-
jecting to any portion of an instruction shall state distinctly
the portion to which he objects and the ground of his objec-
tion. Rule 756 g states that a party assigning error in the in-
structions may not assign as of right an error unless "(1) the
particular portion of the instructions given * * * was distinctly

objected to before the jury retired to consider its verdict and (2) the grounds of objections were stated at that time. Ordinarily no other error will be considered by the Court of Appeals * * *." In *Bennett v. State,* 230 Md. 562 (1963) the Court of Appeals said that the purpose of Rule 756 f is to give the trial court an opportunity to amplify or amend its charge if it deems amplification or amendment necessary. We need not decide whether or not there was substantial compliance with Rule 756 f, for we find no prejudicial error in the reference to the appellant's record as set forth in the instructions of the trial court. It was a factually correct summation of the testimony with respect to the matter and made clear that the convictions were to be considered by the jury only with regard to the appellant's credibility. In *Piles v. State,* 233 Md. 487 (1964) the court instructed the jury as follows:

> "Now past convictions of the accused are to be considered in this case only insofar as they affect his credibility [there are exceptions to this rule, not applicable to the case at bar]. You are not to convict him upon things that he has done in the past for which he has been tried and paid the penalty, but you are to consider them insofar as they affect his credibility. That is, that a man who has been convicted of a serious crime is more likely to tell an untruth than a man who has never been convicted of a serious crime. So * * * in weighing the testimony of the defendant you are to consider his past convictions insofar as they would affect his credibility in this case."

The Court of Appeals held that the instructions correctly stated the law.

(5)

Appellant alleges error in the trial court's voir dire question to the entire array of the jury, "Do any of you have any conscientious scruples against the imposition of capital punishment?" No objection was raised to this question. Thereafter, prior to the jury being impaneled and sworn, counsel for the appellant stated that the jury was acceptable. The point not having been tried and decided by the lower court, this Court

will not ordinarily decide it. Maryland Rule, 1085. In any event, we find no error in the question asked by the court. Appellant states that "the mere fact that a man or woman does not believe in capital punishment should not disqualify an individual from sitting on the jury." We do not agree when the penalty upon conviction of the offense charged may be death, as in the instant case. Maryland Code (1957) Art. 27 § 461. The Court said in *Corens v. State, supra,* at page 564:

> "It is unquestioned * * * that a person who has conscientious scruples against capital punishment cannot properly examine the evidence in a prosecution for a crime for which capital punishment may be imposed, because he does not stand impartial between the prisoner and the State."

Since there are no statutes or precise rules regulating the examination of prospective jurors (cf. Maryland Rule 745), the nature and extent of the voir dire examination rests in the sound determination of the trial court. *Grogg v. State,* 231 Md. 530 (1963); *Piles v. State,* supra. See *Goldstein v. State,* 220 Md. 39 (1959); *Brown v. State,* 220 Md. 29 (1959). There was clearly no abuse of discretion here.

Chapter 500 of the Acts of 1967, adding § 8A to Article 51 of the Maryland Code (1964 Replacement Volume) provides:

> "Hereafter no person shall be disqualified for service as a juror of this State by reason of his beliefs against capital punishment."

It is not applicable to the instant case as it does not become effective until June 1, 1967.

*Judgment affirmed.*