### GARFIELD ARNOLD HAYES *v.* STATE OF MARYLAND

[No. 308, Initial Term, 1967.]

*Decided January 24, 1968.*

The cause was argued before MURPHY, C. J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Roland Walker,* with whom was *A. Gus Mastracci* on the brief, for appellant.

*Bernard L. Silbert, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Charles E. Moylan, Jr., State's Attorney for Baltimore City,* on the brief, for appellee.

ANDERSON, J., delivered the opinion of the Court.

On November 17, 1963, the appellant, Garfield Arnold Hayes, was convicted by a jury of murder in the first degree, in the Criminal Court of Baltimore, Judge J. Gilbert Prendergast presiding. Appellant was sentenced to life imprisonment.

Appellant raises four contentions on appeal:

1) The lower court erred in allowing the jury to view the photograph of the deceased taken after the performance of surgical procedures.
2) The lower court erred in allowing testimony concerning appellant's conviction of the independent crime of carrying a weapon four days prior to the death of Annette Louise Johnson.
3) The lower court erred in not granting appellant's Motion for Judgment of Acquittal as to the count of first degree murder.
4) The lower court erred in not granting appellant's Motion for a Mistrial when the State introduced evidence of appellant's prior conviction, in 1961, of an assault by cutting on the deceased.

The evidence adduced at the trial indicated that one Annette Louise Johnson was shot six times, twice in the abdomen and four times in the back, while she was involved in an altercation with her common-law husband, Garfield Arnold Hayes. The aforementioned altercation occurred on May 29, 1963, at approximately 1:00 p.m., at 3031 Raynor Avenue, Baltimore, Maryland. Horace Jefferson, Jr., deceased's brother, testified he overheard the conversation between deceased and appellant and that it involved the whereabouts of the deceased on the previous

evening and the comment by appellant of "why do you do me like this?" Witness Jefferson further testified that he believed his sister was "scared." At that point an uninterrupted series of rapid shots were heard. Jefferson secured his father's revolver but arrived downstairs only in time to see appellant jump the back fence and run up the alley. Jefferson testified his sister declared to him—"I am going to die, I am going to die, Garfield shot me." On May 30, 1963, at 7:05 p.m., Annette Louise Johnson died. Jefferson further testified that four days prior to the shooting, appellant showed him a .32 calibre automatic pistol.

Officer Portera investigated the shooting and observed Annette Louise Johnson lying on the floor bleeding. He inquired of what occurred and she replied "I am going to die, I am going to die, Garfield Hayes shot me." Officer Portera recovered empty cartridge casings and bullets from the room and made a diagram of the scene.

Dr. Charles Petty testified death was the result of the gunshot wounds and noted the absence of gunshot stippling on deceased's back.

Sergeant Wilhelm, a ballistics expert, testified he had examined nine .32 calibre casings from the scene and five bullets from the body. He testified the bullets were fired from one of four foreign-made semi-automatic pistols.

Appellant testified he owned a small semi-automatic pistol which he showed to Horace Jefferson four days prior to the shooting, but stated it had been placed in deceased's purse four days prior to the shooting. He testified deceased had grabbed the pistol from her purse, that he lunged for it, a struggle ensued and the pistol became twisted behind her and she was shot. He grabbed the gun from the floor, fled out the back door and threw the gun away in the alley. On cross-examination he denied having been convicted in 1961 of assault and cutting of deceased.

On May 31, 1963, appellant gave himself up, denying threatening deceased and alleging he had gone to the above address to bring her back home with him.

Sergeant Dyson investigated the scene and testified the purse was found in a closed position.

8

Photographs are admissible to illustrate and explain relevant matters, and their admissibility into evidence is a determination resting within the sound discretion of the trial court, which is not subject to question unless plainly arbitrary. *Culver v. State,* 1 Md. App. 406, 230 A. 2d 361 (1967). See *Bagley v. State,* 232 Md. 86, 192 A. 2d 53 (1963); *Smith v. State,* 182 Md. 176, 32 A. 2d 863 (1943); *Wimpling v. State,* 171 Md. 362, 189 A. 248 (1937).

In the instant case, defense counsel disclaimed any contention that the photograph failed to represent the condition of body at the time it was taken. An autopsy report and diagram of the wounds were admitted. The gravamen of the contention was the absence of probative value and that it would tend to inflame or incite the jury. The record shows the photograph was used to establish the physique of the deceased and note the location of the wounds, which tended to discredit appellant's version of the shooting. The trial court carefully examined the photograph before passing upon its admission. We find the photograph was properly admitted. *Perry v. State,* 234 Md. 48, 54, 197 A. 2d 833 (1964); *Nocar v. Greenberg,* 210 Md. 506, 124 A. 2d 757 (1956); *Madison v. State,* 200 Md. 1, 7-8, 87 A. 2d 593 (1952); *Culver v. State, supra.*

Appellant's second contention is without merit. The record reveals no prior conviction as allegedly improperly admitted. What was admitted was testimony concerning the possession of a .32 calibre automatic pistol by the appellant four days prior to Miss Johnson's death. This testimony was properly admitted. Expert testimony established the weapon involved was one of four possible .32 calibre automatic pistols. Appellant's version, that decedent drew the weapon that killed her from her purse, was confronted with the expert testimony as to gun type and other testimony as to prior possession of a like weapon by appellant. It is also noted that in appellant's opening statement reference was made to co-ownership with deceased of a gun, the type of which is herein involved.

It is always relevant to show that the defendant before the date of the crime had in his possession the means for its commission. *Underhill's Criminal Evidence,* Vol. III, § 645, 5th Ed. at p. 1522; *Warren on Homicide,* Vol. II, §§ 209, 210 Per-

manent Ed. at p. 86, 90. In the case of *Commonwealth v. Bruno,* 324 Pa. 236, 188 Atl. 320 (1936), it was held that evidence of the purchase of a weapon nine days before the shooting "was clearly admissible for the purpose of showing preparation and ownership." One of the particular circumstances which is not conclusive evidence of guilt, but which may be considered as a link in the chain of circumstantial evidence showing guilt, is the possession of the means of committing the crime. 23 C.J.S. *Criminal Law,* § 907 at p. 556. See *Vincent v. Commonwealth,* 215 Ky. 278, 284 S. W. 1071 (1926); *Johnson v. Commonwealth,* 210 Ky. 398, 276 S. W. 125 (1925); *Tinsley v. State,* 52 Tex. Cr. R. 91, 106 S. W. 347 (1907).

In *Watson v. State,* 208 Md. 210, 117 A. 2d 549 (1955), the Court of Appeals stated that "evidence to be admissible need not be connected positively with the crime alleged and if there is a reasonable probability of its connection with the crime alleged because of circumstances, it is admissible."

In *Meyerson v. State,* 181 Md. 105, 28 A. 2d 833 (1942), it was stated that where appellants were charged in the indictment with an intent, "any fact which supplies a motive for such act or which constitutes a preparation for it is admissible." See *Hitzelberger v. State,* 174 Md. 152, 161, 197 Atl. 605 (1938); *Meno v. State,* 117 Md. 435, 440, 83 Atl. 759 (1912); *Lamb v. State,* 66 Md. 285, 7 Atl. 399 (1886); *Brooke v. Winters,* 39 Md. 505 (1874).

We find the admission of the testimony as to possession of a .32 calibre semi-automatic pistol, by the appellant, four days prior to the shooting to have been a proper showing of possession of the means of committing the crime.

The lower court did not err in refusing to grant appellant's motion for judgment of acquittal.

Article 27, § 407 of the Annotated Code of Maryland states:

"All murder which shall be perpetrated by means of poison, or lying in wait, or by any kind of willful, deliberate and premeditated killing shall be murder in the first degree."

Here there was evidence that appellant possessed the possible means of commission of the crime some four days previous,

10

that appellant sought out the deceased and an argument ensued, that the deceased sounded "scared," that rapid shots occurred thereafter, that six bullet wounds were found—four in the back and two in the front, and that the appellant fled the scene. This evidence supplied the jury with an ample basis to find the corpus delicti of first degree murder. See *Hyde v. State,* 228 Md. 209, 215-216, 179 A. 2d 421 (1962) ; *Cummings v. State,* 223 Md. 606, 611-612, 165 A. 2d 886 (1960) ; *Faulcon v. State,* 211 Md. 249, 257-258, 126 A. 2d 858 (1956) ; *Chisley v. State,* 202 Md. 87, 105-106, 95 A. 2d 577 (1953).

In trial before a jury this Court can review the sufficiency of the evidence, but this Court does not inquire into and measure the weight of the evidence but only determines whether there is any relevant evidence which could properly sustain a conviction. *Culver v. State,* 1 Md. App. 406, 230 A. 2d 361 (1967) ; *Quinn v. State,* 1 Md. App. 373, 230 A. 2d 368 (1967) ; *Borman v. State,* 1 Md. App. 276, 229 A. 2d 440 (1967) ; *Graef v. State,* 1 Md. App. 161, 228 A. 2d 480 (1967). In the instant case, there was legally sufficient evidence from which the jury could be fairly convinced beyond a reasonable doubt of the appellant's guilt.

Appellant's final contention is without merit. In *Gray v. State,* 221 Md. 286, 157 A. 2d 261 (1960), the Court of Appeals stated that "even when the defendant himself has been previously convicted of other crimes, it is well-established law that these previous convictions are inadmissible against him as tending to show that he committed the crime whereof he stands indicted, unless they show knowledge, motive, intent, a common scheme or identification." The introduction into evidence of prior convictions of a defendant is permissible only insofar as they affect his credibility, the theory being that a man who has been convicted of a serious crime is more likely to tell an untruth than a man who has never been so convicted. *Piles v. State,* 233 Md. 487, 197 A. 2d 238 (1967) ; *Culver v. State, supra.* When the defendant voluntarily submits himself as a witness, he may, for the purposes of impeachment, be interrogated as to prior convictions, and denial of such conviction justifies presentment of proof thereof. *Henderson v. Warden,* 237 Md. 519, 523, 206 A. 2d 793 (1965).

Here the defense counsel opened the door to the detailed inquiry by propounding the following question:

> "Q. Garfield, did you ever threaten to kill or to harm
> Annette Johnson?
> A. One time in 1961—"

In pursuing this area on cross-examination, the State's Attorney inquired:

> "Q. Were you convicted in 1961 of assault and cutting
> one Annette Johnson?
> A. No. sir."

Thereafter, the State's Attorney proffered the criminal record into evidence, which the court, apparently motivated by a desire to exercise extreme caution, refused to admit into evidence. We feel, had it been admitted, it would have been admissible as to his credibility. The record before us manifestly negates any merit in the allegation of prejudice to the appellant; therefore, the court acted properly in its denial of the motion for a mistrial.

A supplemental contention was raised, after briefs were submitted, challenging the make up of the jury panel. This question was not raised or decided by the trial court. Therefore, the question is not properly before us. Maryland Rule 1085.

*Judgment affirmed.*